# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8821 | **DATE** | September 9, 2002 |
| **CASE TITLE** | Global Relief v. New York Times, et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth in the attached Memorandum Opinion and Order, the American Broadcasting Inc.'s motion to dismiss Count I of the complaint is DENIED [32-1]. Miller and Eichenwald's motion to adopt the legal memorandum of the New York Times is granted [54-2]. The motion to dismiss Count II by New York Times, Miller and Eichenwald is DENIED [31-1] [54-1]. Associated Press' motion to dismiss Count III is DENIED [36-1]. Mendoza's motion to dismiss Count III is DENIED [59-1] **[Continued on reverse side of minute order].**

(11) ■ [For further detail see attached Memorandum and Opinion order.]

| | No notices required, advised in open court. | | | | **Document Number** |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | SEP 11 2002 | | |
| X | Docketing to mail notices. | | date docketed | | 101 |
| | Mail AO 450 form. | | | | |
| | Copy to judge/magistrate judge. | | docketing deputy initials | | |
| klb(lc) | courtroom deputy's initials | | date mailed notice | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

# Continuation of Minute Order

Globe Newspaper's motion to dismiss is DENIED [56-1]. Mac Daniel's motion to dismiss Count IV is DENIED [66-1]. Daily News L.P.'s and Zef Chafets' motion to dismiss Count V is DENIED [62-1]. Hearst Communications' Request for judicial notice is granted in part and denied in part [45-1]. Hearst's supplemental request for judicial notice is DENIED [82-1]. Winokur and Berthelsen's motion to dismiss for lack of personal jurisdiction is denied [33-1]. Winokur and Berthelsen's motion to join in the San Francisco Chronicle's (Hearst) motions to dismiss and strike is granted [33-2]. Defendant Hearst Communications, Winokur and Berthelsen's special motion to strike Count VI pursuant to California Code of Civil Procedure 425.16 is DENIED [34-1]. Motion to dismiss Count VI by defendants Hearst Communications Inc., Winokur and Berthelsen is DENIED [44-1] [33-1]. Count VII of the complaint is DISMISSED as to ALL defendants for failure to state a claim upon which relief may be granted. Defendants are hereby ordered to answer the complaint by October 1, 2002.

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**



DOCKETED

SEP 1 1 2002

| | | |
|---|---|---|
| GLOBAL RELIEF FOUNDATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 01 C 8821 |
| v. | ) | |
| | ) | HONORABLE DAVID H. COAR |
| NEW YORK TIMES COMPANY, | ) | |
| ASSOCIATED PRESS CORPORATION, | ) | |
| ABC, INC., GLOBE NEWSPAPER | ) | |
| COMPANY, a/k/a THE BOSTON GLOBE, | ) | |
| DAILY NEWS, L.P., MARTHA | ) | |
| MENDOZA, JUDITH MILLER, KURT | ) | |
| EICHENWALD, ANTONIO MORA, ZEF | ) | |
| CHAFETTS, MAC DANIEL, HEARST | ) | |
| COMMUNICATIONS, INC., SCOTT | ) | |
| WINKOKUR and CHRISTIAN | ) | |
| BERTHELSEN | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Global Relief Foundation, Inc. ("GRF") filed a seven count Complaint in this Court against six news organizations and reporters they employ for libel and commercial disparagement. Before this court are ten motions to dismiss for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). For the reasons set forth below, the defendants' motions to dismiss are denied.

### I. Factual and Procedural Background

The following facts are taken from the plaintiff's complaint. Global is a charitable organization organized and doing business in the state of Illinois. It was organized for charitable

161

religious, educational and scientific purposes including to establish, promote, contribute and carry out relief and charitable activities and projects to those in need throughout the world. GRF derives its revenue from charitable and tax-deductible donations from individuals and institutions. It is a tax-exempt, non-profit organization pursuant to §501(C)(3) of the Internal Revenue Code. GRF is one of the largest Muslim humanitarian organizations in the United States.

Defendant, the New York Times Company ("NYT"), is a Connecticut corporation with its headquarters in New York, New York. Defendant, ABC, Inc. ("ABC"), is a California corporation, with its headquarters in New York, New York. Defendant, Globe Newspaper Company, Inc., a.k.a. The Boston Globe ("Boston Globe"), is a New Hampshire corporation with its headquarters in Massachusetts. Defendant, Associated Press, Inc. ("AP"), is a Wyoming corporation with its headquarters in New York, New York. Defendant, Daily News, LP ("Daily News"), is a New York Limited Partnership with its headquarters in New York, New York. Defendant, Hearst Communications, Inc. ("Hearst"), is a California corporation with its headquarters in New York, New York. Defendant, Antonio Mora ("Mora"), is an individual employed by ABC. Defendant, Martha Mendoza ("Mendoza"), is an individual employed by AP. Defendant, Judith Miller ("Miller"), is an individual employed by NYT. Defendant, Kurt Eichenwald ("Eichenwald"), is an individual employed by the NYT. Defendant, Zef Chafets ("Chafets"), is an individual employed by the Daily News. Defendant, Mac Daniel ("Daniel"), is an individual employed by the Boston Globe. Defendant Scott Winokur ("Winokur"), is an individual employed by Hearst. Defendant, Christian Berthelsen ("Berthelsen"), is an individual employed by Hearst.

-2-

On September 11, 2001, the United States experienced a major national tragedy. Four airplanes were hijacked and crashed, three of them into prominent locations (two into the World Trade Center in New York, New York and one into the Pentagon outside of Washington, D.C.). Throughout the day on which this national tragedy occurred, President Bush promised a "full-scale investigation to hunt down and punish those responsible for those acts." In addition to bringing the perpetrators to justice, President Bush stated that the United States would make no distinction between those "who committed these acts and those who harbor them."

On September 12, 2002, GRF condemned the September 11, 2001 attacks and offered its condolences to the families of those who were killed or injured. GRF also posted a message on its website urging donations to aid victims of the tragedy. The message also indicated that GRF would be conducting a blood drive to help the victims.

During the days following September 11, 2001, President Bush declared the suicide strikes "acts of war" and vowed to win this war. On September 14, 2001, the United States began identifying the targets of its war. After listing the 19 hijackers responsible for the September 11, 2001 attacks, the Federal Bureau of Investigation identified 100 individuals believed to have information relating to these hijackers. By September 15, 2001, President Bush publicly identified Osama bin Laden and his al Qaeda network as the prime suspects behind the September 11, 2001 terrorist attacks.

On September 19, 2001, President Bush stated that the United States' war on terrorism would also focus on "NGOs, nongovernmental organizations, [which] serve as fronts, as funding mechanism for terrorist organizations." In furtherance of President Bush's attention to NGOs and other terrorist fronts, President Bush implemented Executive Order 13224 on September 23,

2001 which was intended to freeze assets of people and organizations that support terrorists. In conjunction with this Executive Order, President Bush identified 27 people and organizations whose assets and property would be frozen. Among the 27 organizations targeted by the Executive Order were "three charitable or humanitarian organizations that operate as fronts for terrorist financing and support..." GRF was not one of the 27 organizations listed on September 23, 2001. The Executive Order also authorized the Secretary of State and Secretary of the Treasury to freeze the assets of additional persons who, after investigation, were determined to be associated with terrorism.

On September 24, 2001, ABC's Antonio Mora reported on Executive Order 13224 on Good Morning America. In that report Mora stated that GRF was one of the "charities accused of getting funds to bin Laden." Later that day, ABC stated on its website:

> In an early report on President Bush's Executive Order to freeze assets around the world, Good Morning America said that certain U.S.-based charities (the Holy Land Foundation, the Islamic Relief Agency, the Global Relief Foundation, and the Al Kifah Refugee Center) had been accused of "getting funds to Bin Laden." This is not the case. We regret the error.

On September 28, 2001, the New York Daily News published an article authored by Zev Chafets titled "Beware the Wolves Among Us." The article was principally about the Council on American-Islamic Relations ("CAIR"). It stated that CAIR was "in bed with at least two philanthropic groups suspected of being fronts for one of the Middle East's most lethally anti-American, anti-Jewish jihadists: Palestinian Hamas. The article also stated that GRF "has been accused by Israel and American security experts of funneling money and support to Hamas. Like the Holy Land Foundation, it is currently under intense federal scrutiny." Finally, the article stated that CAIR regarded the two organizations as "victims of persecution."

-4-

By October 1, 2001, the United States had frozen $6 million in bank accounts linked to terrorist activities pursuant to Executive Order 13224, including 30 accounts in the United States and 20 overseas. GRF's money was not frozen.

On October 1, 2001, the NYT published an article written by Judith Miller and Kurt Eichenwald, titled "A Nation Challenged: The Investigation; U.S. Set to Widen Financial Assault." The article indicated that "administration officials are preparing to freeze the assets of about two dozen more charities and other organizations that are suspected of providing money and support to [bin Laden's] terrorist operations." With regards to GRF, the article said:

> Administration officials are recommending that an American charity be included on the new list - the Global Relief Foundation, which provides emergency relief, medical aid and engages in other humanitarian efforts around the world.

> Global Relief, based in Bridgeview, Ill., long a hub of militant Islamic activity, is also making an appeal on its Web site for victims of the catastrophes at the World Trade Center and the Pentagon, though it does not refer to them as terrorist attacks.

> Global Relief was originally included two years ago on a list circulated by the Clinton administration of 30 organizations with suspected ties to terrorism. But in an interview last year Stanley Cohen, a lawyer for Global Relief, called the investigations of the foundation 'another of the government's pathetic attempts to sully committed Islamic organizations.'"

On October 5, 2001, AP published an article authored by Martha Mendoza titled "Islamic Aid Groups Scrutinized." The article identified GRF as one of three U.S. based relief organization receiving "close federal scrutiny" that "may or may not be on the government's next list" of organizations to have their assets frozen. The article included a statement by Ashraf Nubani, GRF's spokesmen, that the "organization is being unfairly singled out because it is run by Muslims."

On October 11, 2001, the Boston Globe published an article written by Mac Daniel and titled "Charity Probe: Muslim Relief Agency Eyed in Terror Link." The entire article was about GRF and it stated that GRF was expected to be added to the Treasury list of U.S. charities with ties to terrorism. The article said that many of the world's top relief agencies had never even heard of GRF's work. It included a statement from GRF's accountant, Zahir Kazmi, who said he could not say how or where the money was spent after it left American shores. Nubani denied that the group's funds go to anything but humanitarian and said GRF has only been in "casual" contact with federal investigators.

On November 7, 2001, Hearst published an article written by Winokur and Berthelsen titled "Two Muslim Charities Probed for Terror Link; Bay Donors Chip in to Chicago Groups." The article named GRF as one of two charities that the "U.S. treasury Department is scrutinizing." It talked about a Muslim's obligation to give a portion of his income to charity and that GRF is one of the charities. The article also stated that GRF had "denied roles in terrorist financing and condemned the Sept. 11 attacks on the World Trade Center and the Pentagon."

On or about November 15, 2001, GRF filed the instant suit against the news organizations and reporters named above alleging defamation and commercial disparagement.

## II.    Standard

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests whether the plaintiff has properly stated a claim for which relief may be granted, not whether the plaintiff will prevail on the merits. Pickrel v. City of Springfield, Ill., 45 F.3d 1115 (7th Cir.1995). Thus, dismissal of the complaint is only proper where it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.

-6-

Szumny v. Amer. Gen. Fin., Inc., 246 F.3d 1065, 1067 (7th Cir.2001) (citations omitted). At a minimum, a complaint must contain facts sufficient to state a claim as a matter of law. Hickey v. O'Bannon, 287 F.3d 756 (7th Cir. 2002) (citations omitted). All well-pleaded facts are accepted as true and are construed in favor of the plaintiff. McLeod v. Arrow Marine Transp., Inc., 258 F.3d 608, 614 (7th Cir.2001). Further, the Court is not obliged to accept as true legal conclusions or unsupported conclusions of fact. Id.

When reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court's inquiry is generally limited to the allegations in the complaint. General Electric Capital Corp. v. Lease Resolution Corp., 182 F.3d 1074, 1080 (7th Cir. 1997) ("GE Capital"). If matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as a Rule 56 motion for summary judgment, and all parties are to be given reasonable opportunity to present additional materials made pertinent to such a motion. Fed. R. Civ. P. 12(b). The consideration of outside matter without converting the motion may result in reversible error. See Carter v. Stanton, 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972). There is, however, an exception which allows the court to take judicial notice of matters of public record without converting a motion for failure to state a claim into a motion for summary judgment. GE Capital, 182 F.3d at 1080. This exception allows courts to avoid unnecessary proceedings when an undisputed fact in the public record establishes that the plaintiff cannot satisfy the Rule 12(b)(6) standard. Id.

A court may take judicial notice of an adjudicative fact that is both "not subject to reasonable dispute" and either 1) "generally known within the territorial jurisdiction of the trial court" or 2) "capable of accurate and ready determination by resort to sources whose accuracy

-7-

cannot reasonably be questioned." Fed. R. Evid. 201(b). Judicial notice is premised on the concept that certain facts or propositions exist which a court may accept as true without requiring additional proof from the opposing parties. See GE Capital, 182 F.2d at 1081. Judicial notice is most frequently used for noticing the contents of court records such as judicial orders or decrees. Id. Typically, the notice of a court order is limited to the purpose of recognizing the judicial act or litigation, but not for the truth of the matters asserted in the document. Id. at n.6.

In this case, the defendants would have the Court take judicial notice of the complaint filed in a related case, Global Relief Foundation v. O'Neill, et. al., No. 02 C 0674 (N.D. Ill.), which includes the following allegations: (1) that on or about December 14, 2001, FBI agents raided the Bridgeview office of GRF and ordered GRF's employees out of the building while it conducted a search of the premises and seized documents; and (2) that GRF's assets were frozen on December 14,2001 pending an investigation. The plaintiff objects to the Court taking notice of those facts because they are disputable. The Court may, however, take notice of the fact that GRF filed a complaint against the government for the raiding of GRF's offices and the freezing of its assets.

The defendants would also like the Court to take judicial notice of documents filed by the government in the related case which state that the government had been investigating GRF since at least September, 2001 and that it had a reasonable basis to believe that GRF was subject to Executive Order 13224 and IEEPA by acting for or on behalf of designated terrorists.[1] It

---

[1]The documents include: (1) an affidavit by a government official, R. Richard Newcomb; (2) the government's statement of material facts in support of its opposition to plaintiff's motion for a preliminary injunction; and (3) the government's memorandum of law in support of defendant's motion to dismiss or for summary judgment and in opposition to plaintiff's motion for a preliminary injunction.

would be improper for the Court to take notice of these documents. The defendants want these documents admitted, not simply to establish the proceedings, but for the truth of the matters asserted within them. Defendants wish to use the substance of the documents filed to prove that the statements made in their respective newspapers and news programs were true. The Court can not accept the documents without converting the Rule 12(b)(6) motion into one for summary judgment and allowing plaintiff to respond.

## III. Discussion

ABC and Mora move to dismiss counts 1 and 7 of the complaint for failure to state a claim upon which relief may be granted because the statements they made were true. The NYT, Miller and Eichenwald similarly move to dismiss counts 2 and 7; the AP and Mendoza move to dismiss counts 3 and 7; the Boston Globe and Daniel move to dismiss counts 4 and 7. The Daily News and Chafets move to dismiss counts 5 and 7 for lack of personal jurisdiction and for failure to state a claim upon which relief may be granted. Hearst, Winokur and Berthelsen move to strike Counts 6 and 7 pursuant to California Code of Civil Procedure § 425.16. Further, Winokur and Berthelsen move to dismiss counts 6 and 7 for lack of personal jurisdiction. Daniel also moves to dismiss Counts 4 and 7 for lack of personal jurisdiction.

<u>Personal Jurisdiction</u>

Pursuant to Fed. R. Civ. P. 12(b)(2), Chafets, Daily News and Daniel argue that this Court does not have personal jurisdiction over them. Generally, "a federal court sitting in Illinois has personal jurisdiction over a nonresident defendant only if an Illinois court would have jurisdiction." <u>Jamik, Inc. v. Days Inn.</u>, 74 F.Supp.2d 818, 820 (N.D.Ill. 1999). An Illinois court should exercise jurisdiction over a particular defendant if the court's exercise of jurisdiction

comports with: (1) Federal due process; (2) the Illinois constitution's due process clause; and (3) Illinois' long-arm statute. Rollins v. Ellwood, 141 Ill.2d 244, 272, 565 N.E.2d 1302, 1315 (Ill. 1990).

The Daily News argues that jurisdiction would be improper under the Illinois long-arm statute. The Illinois long arm statute allows jurisdiction based on "[t]he commission of a tortious act within this State." 735 ILCS 5/2-209(a)(2). Under Illinois law, a tort occurs where the injury occurs. McBreen v. Beech Aircraft Corp., 543 F.2d 26, 28 (7th Cir.1976); Cross v. Simons, 729 F.Supp. 588, 592 (N.D.Ill.1989). The Defendant correctly points out that this Court does not have jurisdiction merely because acts committed outside of Illinois have resulted in an economic loss within the state. McIlwee v. ADM Indus., Inc., 17 F.3d 222 (7th Cir. 1994); Cross, 729 F.Supp. at 592; TMF Tool Co. v. H.M Financiere & Holding, S.A., 689 F.Supp. 820, 824 (N.D.Ill.1988); Yates v. Muir, 492 N.E.2d 1267, 1268-69 (Ill.1986). However, mailing or causing the mailing of messages to Illinois, coupled with the intent to affect Illinois interests, has frequently and consistently been held to satisfy the requirements of 2-209. FMC Corp. v. Varonos, 892 F.2d at 1312, n. 9; Cross, 729 F.Supp. at 592; Club Assistance Program Inc. v. Zukerman, 594 F.Supp. 341, 346-347 & n. 9 (N.D.Ill.1984) (question turns upon intent to affect Illinois interests). Thus, construing the complaint in the light most favorable to he plaintiff, this Court concludes that the Daily News mailing of its newspaper to Illinois residents coupled with its intent to affect Illinois interests (by reporting on an Illinois company) constitutes the commission of a tort within Illinois for purposes of jurisdiction.

The exercise of jurisdiction must also comport with federal due process. Due process requires that the defendants have certain "minimum contacts with [the forum]." International

Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The touchstone is whether the "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). The requisite connection, however, need not involve physical entry into the forum. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985).

Chafets and the Daily News argue that this Court does not have jurisdiction over them because "[n]either the Daily News' minuscule circulation in Illinois nor Chafets' infrequent contacts with Illinois justify haling either of them into an Illinois Court." According to the Daily News, its circulation is principally in the New York metropolitan area and it only has seven subscribers in Illinois. In Calder v. Jones, 465 U.S. 783, 789- 90, 104 S.Ct. 1482, 1487, 79 L.Ed.2d 804, 812-13 (1984), a unanimous Supreme Court determined in a libel case that a California court could exercise personal jurisdiction over Florida journalists, despite the fact that they did not directly circulate the allegedly defamatory article in California, reasoning that by participating in an allegedly tortious act intentionally directed at California and a California resident, the author and editor of the article must reasonably anticipate being haled into court in California, based on the effects of their conduct in Florida. GRF argues, that like in Calder, the court should exercise jurisdiction because the Daily News and Chafets intentionally directed their conduct at Illinois and an Illinois corporation.

In Gordy v. Daily News, L.P., the Ninth Circuit upheld the exercise of personal jurisdiction of the Daily News in California in a defamation suit because the Daily News knew that Gordy was a California resident and the Daily News distributed 13-18 copies of its paper via

subscription to California . 95 F.3d 829 (1996). Likewise, in this case, the Daily News was

fully aware that GRF was an Illinois corporation with its principal place of business in Illinois

and it distributed copies of its paper via subscription to individuals in Illinois. The defendants

rely on Noonan v. Winston Co. to support its claim that jurisdiction is improper because the

publication's circulation in the forum state is minimal. 135 F.3d 85 (1st Cir. 1998). That case,

however, specifically distinguishes Gordy because in Noonan the defendant specifically denied

knowledge of the destination of the magazines, whereas in Gordy the defendant specifically

targeted California by distributing newspapers via regular customer subscriptions. In an affidavit

attached to its motion to dismiss, the Daily News states that it has seven subscribers in the State

of Illinois. Thus, the exercise of personal jurisdiction over the Daily News comports with

federal due process because the Daily News could reasonably anticipate being haled into Illinois

court.

Daniel argues that personal jurisdiction over him is improper. Daniel is a resident of

Massachusetts and a reporter for the Boston Globe. Thus, Daniel argues that his "sporadic

contact with Illinois" does not rise to the constitutionally mandated minimum to support personal

jurisdiction. His argument, like that of the Daily News and Chafets, rests principally on the low

circulation of the Boston Globe in Illinois. The Boston Globe has thirteen subscribers in Illinois.

Daniel's motion to dismiss for lack of personal jurisdiction is denied for the reasons set forth

above.

Defendants Winokur and Berthelsen, both residents of California, also move to dismiss

for lack of personal jurisdiction. They argue that this Court cannot exercise jurisdiction over

them because the "fiduciary shield doctrine" precludes Illinois courts (federal or state) from

-12-

exercising jurisdiction over a non-resident tortfeasor where the conduct which gave rise to the tort was "solely on behalf of [their] employer ... ." Rice v. Nova Biomedical Corp., 38 F.3d 909, 912 (7th Cir. 1994). The fiduciary shield doctrine is inapplicable if the employee's tortious acts in Illinois were intended to serve his personal interests. See Rice, 38 F.3d at 918. The fiduciary shield doctrine is usually said to be discretionary or "equitable," rather than absolute, an entitlement. Burnhope v. National Mortgage Equity Corp., 208 Ill.App.3d 426, 153 Ill.Dec. 398, 567 N.E.2d 356, 363-64 (1990). Berthelsen and Winokur have submitted affidavits to substantiate their claim that the article originated from an assignment from their editors to cover the financial angle of the terrorism story. The reporters did have some personal interest. Their names were identified in the byline to the article as authors of the report. At this point in the litigation, it would premature to dismiss Winokur and Berthelsen for lack of personal jurisdiction. Accordingly, Winokur and Berthelsen's motion to dismiss is denied.

Defamation - Counts I through V

In Counts I through V of the complaint, GRF alleges that the respective news organizations defamed GRF by falsely reporting that GRF was under investigation for alleged links to terrorism. All of the defendants move to dismiss the claims for failure to state a claim upon which relief may be granted. "The law of defamation is well-settled: 'A statement is considered defamatory if it tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with him.'" Parker v. House O'Lite Corp., 324 Ill. App. 3d 1014, 756 N.E.2d 286, 292, 258 Ill. Dec. 304 (Ill. App. Ct. 2001), app. denied, 763 N.E.2d 772 (Ill. 2001).[2] To establish defamation under Illinois

[2]The defendants in Counts I through V do not dispute that Illinois law applies.

law, a plaintiff must show: (1) the defendant made a false statement about the plaintiff; (2) there was an unprivileged publication to a third party with fault by the defendant; and (3) the publication damaged the plaintiff. Id. at 291-92. Parker v. House O'Lite Corp., 324 Ill. App. 3d 1014, 756 N.E.2d 286, 291-92, 258 Ill. Dec. 304 (Ill. App. Ct. 2001), app. denied, 763 N.E.2d 772 (Ill. 2001).

On the face of the complaint, GRF has met this requirement for Counts 1-5. In each count, GRF alleges that the respective news agencies and individuals falsely reported that GRF was under investigation by the government for suspected ties to terrorism and that GRF may be put on the list of agencies with their assets frozen. GRF also alleges that the statements were widely published, via newspaper or television. Finally, GRF alleges that it was damaged in that the level of donations significantly decreased after the false statements.

All of the defendants, however, claim that the statements were true. One who publishes a statement of fact is not subject to liability for defamation if the statement is true. Wynne, 741 N.E.2d at 675. Further, only "substantial truth" is required for this defense. Id. Although substantial truth is normally a question for the jury, where no reasonable jury could find that substantial truth had not been established, the question is one of law. Id. at 676 (citing Hollymatic Corp. v. Daniels Food Equip., 39 F. Supp. 2d 1115 (N.D. Ill. 1999)). Defendants argue that truth discovered during the course of litigation is as effective a defense as truth known at the time of publication. See Haynes v. Alfred A. Knopf, Inc., 8 F.3d 1222 (7th Cir. 1993); see also Robert D. Sack, Sack on Defamation, Libel, Slander and Related Problems, § 3.6, p. 3-14 (3d ed. 2001). At this point, however, the defendants have not established the truth of their

statements.[3]  Whether or not GRF will ultimately succeed on the merits is irrelevant. A Rule 12(b)(6) motion only tests the sufficiency of the complaint and the facts must be construed in the light most favorable to the plaintiff. Thus, it would be improper for this Court to dismiss Counts 1 -6 of the complaint on the grounds of truth.

Defendants next argue that the statements are not defamatory per se. Certain limited categories of defamatory statements are deemed actionable per se because they are so obviously and materially harmful to the plaintiff that injury to the plaintiff's reputation may be presumed. Wynne v. Loyola Univ. of Chicago, 318 Ill. App. 3d 443, 741 N.E 2d 669, 675, 251 Ill. Dec. 782 (Ill. App. Ct. 2000). The four categories of defamatory per se statements are (1) words that impute the commission of a criminal offense; (2) words that impute infection with a loathsome communicable disease; (3) words that impute an inability to perform or want of integrity in the discharge of duties of office or employment; and (4) words that prejudice a party, or impute a lack of ability, in his or her trade, profession, or business. Id.

GRF alleges that falsely reporting that GRF was being investigated by the federal government for alleged ties to terrorism is defamatory per se because it prejudices GRF in its business.[4]  GRF is a charitable organization where public perception is important because it relies

---

[3]The Court has taken judicial notice of the fact that GRF filed a complaint alleging that on December 14, 2001, GRF's office was raided by the government, its documents were seized, and its assets frozen pending an investigation. That fact, however, says nothing about whether GRF was under investigation. Further, the Court, as previously explained, will not take judicial notice of the documents filed in the related proceeding to establish the truth of the statements made by the news agencies. Moreover, the allegations of the complaint filed in the related proceedings do not constitute judicial admissions of the truth of what was reported by the defendants here.

[4]Specifically, ABC and Mora stated that GRF was "accused of getting funds to bin Laden." NYT, Miller and Eichenwald stated that "[a]dministration officials are

on the public for donations. The news agencies argue that their statements can be innocently construed. A statement that is defamatory per se is not actionable if reasonably capable of an innocent construction. Chapski v. Copley Press, 92 Ill.2d 344, 352, 65 Ill.Dec. 884, 442 N.E.2d 195 (1982). If a statement, considered in context, with its words and the implications therefrom given their natural and obvious meaning, may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff, it can not be actionable per se. Id. The preliminary determination is a question of law to be resolved by the court in the first instance. Id. The court will not, however, strain to find unnatural but possibly innocent meanings of words where the defamatory meaning is more probable.

The news organizations all point out that Illinois courts have long recognized that a report identifying someone as under investigation is not libelous per se and does not carry the defamatory implication of guilt or responsibility for the alleged conduct that is under investigation. See Cartwright v. Garrison, 447 N.E.2d 446, 449, 69 Ill. Dec. 299, 232 (Ill. App. Ct. 1983). Thus, according to the defendants, the reports can reasonably be interpreted as not accusing plaintiff of wrongdoing and are, therefore, not actionable as a matter of law. Id. at 449. The news organizations' argument that the statements can be innocently construed necessarily

_____

recommending that [GRF] be included on the new list [of organizations that are suspected of providing money and support to Osama bin Laden]." AP and Mendoza stated that GRF was "[a]mong U.S.-based relief organizations receiving close federal scrutiny" and "may or may not be on the government's next list." Boston Globe and Daniels stated that GRF "may also be a clandestine agent of terror, according to federal investigators" and that GRF "this week is expected to be added to an undated Treasury list of US charities and relief agencies with alleged ties to terrorism, government officials said." The Daily News and Chafets stated that GRF "has been accused by Israel and American security experts of funneling money and support to Hamas. Like the Holy Land Foundation, it is currently under intense federal scrutiny." Hearst, Winokur, and Berthelsen stated that GRF is one of "the organizations the U.S. Treasury Department is scrutinizing."

depends on the truth of the statements that GRF was under investigation or receiving close federal scrutiny and that its assets were likely to be frozen. None of the reports can be innocently construed if those statements are false. The statements regarding the federal investigation carries a potentially defamatory meaning, especially if false as is alleged in the complaint. See Action Repair, Inc. v. American Broadcasting Companies, Inc., 776 F.2d 143, 149 (7th Cir. 1985) (finding that the trial court erred in dismissing a defamation claim under Rule 12(b)(6) where the plaintiff alleged that report of an investigation was false). Falsely reporting that a charitable organization is suspected of links to terrorism in the wake of September 11 could do substantial harm to the organization's reputation. Thus, when considered in context, and the words are given their natural and obvious meanings, a "defamatory meaning is far more probable." Chapski, 92 Ill.2d at 350-51, 65 Ill.Dec. 884, 442 N.E.2d 195. A complaint is sufficient whenever the plaintiff could prevail under facts consistent with the complaint's allegations.

The defendants also argue that they are protected by the fair report privilege. Illinois recognizes a privilege for fair and accurate summaries of, or reports on, government proceedings and investigations. See Brown & Williamson Tobacco Corp. v. Jacobson, 713 F.2d 262 (7th Cir. 1983). Again, GRF is alleging that the report about the alleged government investigation was false and thus unfair and inaccurate. At this stage in the proceedings, the fair report privilege cannot defeat the properly pled defamation claim.

Count VI - Defamation by San Francisco Chronicle

In Count VI of the complaint, GRF alleges that Hearst (via the San Francisco Chronicle), Winokur, and Berthelsen defamed GRF by falsely asserting that GRF was under investigation for suspected ties to terrorism. As in Counts I through V, GRF satisfies the pleading requirements

for defamation. Count VI is treated separately, however, because Hearst moves to strike or dismiss Count VI pursuant to California Code of Civil Procedure § 425.16. This presents a choice of law question.

A federal court sitting in diversity must first apply the forum state's choice of law rules to determine which state's substantive law governs the dispute. Healy Co. v. Milwaukee Met. Sewerage Dist., 50 F.3d 476, 478 (7th Cir.1995) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). Illinois law supplies the choice-of-law rules, given the location of the forum. Id. And Illinois follows the "most significant relationship" approach in defamation cases. Ferguson v. Kasbohm. 131 Ill.App.3d 424, 86 Ill.Dec. 605, 475 N.E.2d 984 (1st Dist.1985). "The Second Restatement method is constructed around the principle that the state with the most significant contacts to an issue provides the law governing that issue." Ruiz v. Blentech Corp., 89 F.3d at 323-24. In "conflicts- speak," this is known as the doctrine of depecage. Spinozzi v. ITT Sheraton Corp., 174 F.3d 842, 848 (7th Cir.1999); In re Air Crash Disaster Near Chicago, Illinois on May 25, 1979, 644 F.2d 594, 610-11 (7th Cir1981) (defining depecage as "the process of applying rules of different states on the basis of the precise issues involved"). Under the doctrine of depecage, the court must identify each issue raised in a case and then determine the controlling law on an issue-by-issue basis. Vantassell-Martin v. Nelson, 741 F.Supp. at 704; Restatement (Second) of Conflicts § 145, comment d ("[e]ach issue is to receive separate consideration if it is one which would be resolved differently under the local law rule of two or more of the potentially interested states"). The issue of whether a statement is defamatory or invades the right to privacy is distinct from the issue of whether that statement is privileged. Vantassell-Martin v. Nelson, 741 F.Supp. at 704 (the

-18-

threshold defamation issue and the applicability of defenses are separate issues); Restatement
(Second) of Conflicts § 145, comment d ("the local law of the state where the parties are
domiciled, rather than the local law of the state of conflict and injury, may be applied to
determine whether one party is immune from tort liability to the other ...").

The "most" significant element of defamation is the injury, as the old rule of lex loci
delicti always insisted. Washington Nat. Ins. Co. v. Administrators, 2 F.3d 192 (7th Cir. 1993).
Thus, since the injury occurred in Illinois, Illinois has a greater interest in application of its laws
to issues underlying the defamation claim - i.e., whether plaintiff suffered a sufficient injury to
state a claim for defamation under Illinois law.  California has a great interest in determining how
much protection to give California speakers such as the Chronicle, Winokur and Berthelsen.
Thus, California has the most significant relationship and the law of California will apply to
defenses to defamation.

Defendant contends that the lawsuit filed by GRF is a SLAPP ("Strategic Lawsuit Against
Public Participation") action and therefore should be dismissed pursuant to California's
Anti-SLAPP statute. See Cal.Civ.Proc.Code § 425.16 (West 2001). California's Anti-SLAPP
statute is a procedural rule designed "to provide for the early dismissal of meritless suits aimed at
chilling the valid exercise of the constitutional rights of freedom of speech and petition for the
redress of grievances." Globetrotter Software, Inc. v. Elan Computer Group, Inc., 63 F.Supp.2d
1127, 1128 (N.D.Cal.1999). See also United States ex rel. Newsham v. Lockheed Missiles &
Space Co., 190 F .3d 963, 970-71 (9th Cir.1999); Wilcox v. Superior Court, 33 Cal.Rptr.2d 446,
449-50 (Cal.Ct.App.1994). The California legislature explicitly enacted the statute to respond to
what it saw as a disturbing increase in lawsuits brought primarily to chill the valid exercise of the

-19-

constitutional rights of freedom of speech and petition for the redress of grievances. The California legislature found that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. Cal.Civ.Proc.Code § 425.16(a).

Under the Anti-SLAPP statute, a defendant may file a special motion, but to succeed on the motion he first must meet his prima facie burden of showing that the suit arises out of the exercise of his right of petition or free speech. See Cal.Civ.Proc.Code § 425.16(b)(1). The anti-SLAPP statute defines "act[s] in furtherance of a person's right of petition or free speech" as: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest. Cal.Code Civ. Pro. § 425.16(e). If the defendant carries this burden, the plaintiff must demonstrate through the pleadings and affidavits that there is a probability he will prevail on the claim. See id. § 425.16(b)(1), (b)(2) Failure to do so results in the dismissal of the lawsuit and the awarding of attorneys' fees and costs to the defendant. See id. § 425.16(b)(1). (c). Through the invocation of this statute, the defendant can obtain early dismissal of a lawsuit before substantial time and expense is incurred defending against meritless First Amendment-chilling litigation.

Defendants Hearst, Winokur and Berthelsen argue that the Anti-SLAPP statute should be applied in this case. They contend that plaintiffs will be unable to prevail in this matter because

the statements made were true. Plaintiffs oppose the special motion, arguing that the statute should not apply because it conflicts with the Federal Rules of Civil Procedure. While the Seventh Circuit has not addressed the issue, the Ninth Circuit has expressly held that California's anti- SLAPP statute is not preempted by the Federal Rules of Civil Procedure and is applicable in federal cases. See United States v. Lockheed Missiles & Space Company, 190 F.3d 963, 971 (9th Cir.1999).

Assuming that the Anti-SLAPP statute may be applied in this case, this Court is unconvinced that it requires dismissal of this action. To begin with, GRF has made its prima facie case of defamation. GRF is accusing Hearst of falsely reporting that it was under investigation by the federal government. Thus, it is difficult to see how the Chronicle's statements could have been made in connection with a government investigation when GRF is alleging that there had been no investigation before the time of publication. Accordingly, this Court denies Hearst, Winokur, and Berthelsen's special motion to strike and to dismiss on the basis of the Anti-SLAPP statute.

Hearst, Winokur and Berthelsen also argue that the Count VI must fail because the Chronicle published a retraction. Whether or not a newspaper is relieved of liability depends on whether the correction was timely and in substantially as conspicuous a manner as the original statement was published. See Twin Coast Newspapers, Inc. v. Superior Court, 208 Cal. App.3d 656, 658 (1989). At this point in the litigation, it would be impossible for the Court to make such a determination as a matter of law. Accordingly, Hearst, Winokur and Berthelsen's motion to dismiss on grounds of its retraction is denied.

Hearst, Winokur and Berthelsen also argue that they are protected by the wire defense doctrine. Under the wire defense doctrine, the republication of information published by a reliable source of news cannot constitute defamation unless the information was reproduced in a negligent manner. This defense is available when a local media organization republishes a release from a reputable news agency without substantial change and without actually knowing that the release is false. Kapetanovic v. Stephen J. Cannell Prods., 1999 WL 39541, *4 (N.D. Ill., Jan. 21, 1999) (citing Nelson v. Associated Press, Inc., 667 F.Supp. 1468, 1478-80 (S.D.Fla.1987)). The defense has been applied to shield network affiliates from liability when they act as mere conduits for national network news broadcasts. Id. (citations omitted). Although Hearst, Winokur, and Berthelsen might actually be republishers protected by this defense, it is simply too early in the litigation to make such a conclusion without the benefit of discovery. Accordingly, this Court denies Hearst, Winokur and Berthelsen's motion to dismiss.

Count VII - Commercial disparagement

In Count VII, GRF asserts commercial disparagement claims for damages and injunctive relief against all defendants under the Illinois Uniform Deceptive Trade Practices Act (the "UDTPA"), 815 ILCS 510/1 et seq., the Illinois Consumer Fraud and Deceptive Trade Practices Act (the "CFA"), 815 ILCS 505/1 et seq., and Illinois common law. The defendants move to dismiss count 7 for failure to state a claim upon which relief may be granted.

In order to state a claim for commercial disparagement, GRF must allege that Defendants made a statement impugning the quality of GRF's services. Cogniplex, Inc. v. Hubbard Ross, L.L.C., 2001 WL 436210, at *6 (N.D. Ill. Apr. 27, 2001). Similarly, a disparagement claim under the CFA must allege that the statement attacked the quality of the plaintiff's goods or

services. Crinkley v. Dow Jones & Co., 385 N.E.2d 714, 719, 24 Ill. Dec. 573, 578 (Ill. App. 1978). Commercial disparagement under Illinois common law, if recognized, also would require "false and demeaning statements regarding the quality of another's goods and services." Becker v. Zellner, 684 N.E.2d 1378, 1387-88, 226 Ill. Dec. 175, 184-85 (Ill. App. 1997) (quotation omitted).

There is a "clear line of demarcation" between defamation and commercial disparagement. Crinkley, 385 N.E.2d at 719 (quotations omitted). Statements attacking the plaintiff itself or its conduct, as opposed to the quality of its goods or services, may give rise to a defamation claim, but cannot support a commercial disparagement claim. See Allcare, Inc. v. Bork, 531 N.E.2d 1033, 1037, 126 Ill. Dec. 406, 410 (Ill. App. 1988) (accusations that medical supply company was paying bribes and under investigation for fraud did not state a claim for commercial disparagement because the statement did not disparage the quality of plaintiff's goods or services). GRF argues that the reports leave consumers with the impression that GRF is soliciting funds to relieve human suffering, but simultaneous acting to inflict - or sponsor- human suffering, which impugns the quality of GRF's service as a charity or outlet for charitable donations. Thus, according to GRF, donors are likely to take their business to other outlets. The Illinois Appellate Court has expressly rejected this argument: "in almost every case of defamation of a business or businessman it could be alleged that the defamation caused third parties to refrain from dealing with the plaintiff," but that reasoning improperly "blur[s] the distinction between defamation and commercial disparagement." Allcare, 531 N.E.2d 1033, 1037-38. Accordingly, Count VII of the complaint is dismissed for failure to state a claim upon which relief may be granted.

## Conclusion

For the foregoing reasons, the American Broadcasting Inc.'s motion to dismiss Count I of the complaint is DENIED. Miller and Eichenwald's motion to adopt the legal memorandum of the New York Times is granted. The Rule 12(b)(6) motion by New York Times, Miller and Eichenwald to dismiss Count II of the complaint is DENIED. Associated Press' motion to dismiss Count III of the complaint is DENIED. Mendoza's motion to dismiss Count III is DENIED. Globe Newspaper motion to dismiss Count IV is DENIED. Mac Daniel's motion to dismiss Count IV is DENIED. Daily News L.P. and Zef Chafets' motion to dismiss Count V is DENIED. Hearst's request for judicial notice is granted in part and denied in part. Winokur and Berthelsen's motion to dismiss for lack of personal jurisdiction is denied. Winokur and Berthelsen's motion to join in the San Francisco Chronicle's (Hearst) motions to dismiss and strike is granted. Defendant Hearst Communications, Winokur and Berthelsen's special motion to strike Count VI pursuant to California Code of Civil Procedure 425.16 is DENIED. Hearst Communications Inc., Winokur and Berthelsen's motion to dismiss count VI is DENIED. Count VII of the complaint is DISMISSED as to ALL defendants for failure to state a claim upon which relief may be granted.

Enter:

David H. Coar
**United States District Judge**

**Dated: September 9, 2002**