# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8821 | **DATE** | 2/19/2003 |
| **CASE TITLE** | Global Relief Foundation, Inc. vs. New York Times Company, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants' Joint Motion for Summary Judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth in the attached Memorandum Opinion and Order, summary judgment is GRANTED in favor of the defendants and against the plaintiff [112-1]. Defendants' motion to strike plaintiff's "additional facts" and portions of its L.R. 56.1 response to defendants' statement of uncontested material facts is DENIED as moot [132-1]. All other motions are moot and terminated. This action is closed.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | FEB 20 2003 date docketed | |
| | Notified counsel by telephone. | | | 137 |
| X | Docketing to mail notices. | | | |
| X | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | courtroom klb (lc) deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GLOBAL RELIEF FOUNDATION, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 01 C 8821 |
| v. | ) |
| | ) HONORABLE DAVID H. COAR |
| NEW YORK TIMES COMPANY, ASSOCIATED PRESS CORPORATION, ABC, INC., GLOBE NEWSPAPER COMPANY, a/k/a THE BOSTON GLOBE, DAILY NEWS, L.P., MARTHA MENDOZA, JUDITH MILLER, KURT EICHENWALD, ANTONIO MORA, ZEF CHAFETTS, MAC DANIEL, HEARST COMMUNICATIONS, INC., SCOTT WINKOKUR and CHRISTIAN BERTHELSEN | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Global Relief Foundation ("GRF") brought an action for libel in this Court against six different news organizations and the reporters they employ. Each of the defendant news organizations published a news report at some point between September 24, 2001 and November 7, 2001 referring to a government investigation into possible links to terrorism by GRF and the possibility that GRF's assets would be frozen. GRF alleges that each news report is false and defamatory. Before this court is the defendants' joint motion for summary judgment. For the reasons set forth below, defendants' motion is granted.

-1-

I. Jurisdiction and Venue

Plaintiff, Global Relief Foundation, Inc. is a charitable organization incorporated and having its principal place of business in the State of Illinois. Defendant, the New York Times Company ("The Times"), is a New York corporation with its principal place of business in the State of New York. Defendant, American Broadcasting Companies, Inc. ("ABC"), is a Delaware corporation with its principal place of business in the State of New York. Defendant Globe Newspaper Company, Inc., a.k.a. The Boston Globe, (the "Globe"), is a Massachusetts corporation with its principal place of business in the Commonwealth of Massachusetts. Defendant, Associated Press, Inc. ("AP"), is a not-for-profit New York corporation with its principal place of business in the State of New York. Defendant, Daily News, L.P. ("DNLP"), is a Limited Partnership formed under the laws of the State of Delaware with its principle place of business in the State of New York.. DNLP's general partner, New DN Company, is a Delaware corporation with its principal place of business in the State of New York. DNLP's limited partners, Fred Drasner and Mortimer Zuckerman, are citizens of the State of New York. Defendant, Hearst Communications, Inc. ("Hearst"), is a Delaware corporation with its principal place of business in the State of New York.

Defendant, Antonio Mora ("Mora"), was a citizen of the State of New York at the time of the filing of the Complaint. Defendant, Martha Mendoza ("Mendoza"), was a citizen of the State of California at the time of the filing of the Complaint. Defendant, Judith Miller ("Miller"), was a citizen of the State of New York at the time of the filing of the Complaint. Defendant, Kurt Eichenwald ("Eichenwald"), was a citizen of the State of Texas at the time of the filing of the Complaint. Defendant, William Louis (Zev) Chafets ("Chafets"), was a citizen of the State of

New York at the time of the filing of the Complaint. Defendant, Scott Winokur ("Winokur"), was a citizen of the State of California at the time of the filing of the Complaint. Defendant, Christian Berthelsen ("Berthelsen"), was a citizen of the State of California at the time of the filing of the Complaint.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Specifically, the amount in controversy, as sought by GRF, exceeds $75,000 exclusive of interest and costs and the action is between citizens of different states. This Court has venue over this matter pursuant to 28 U.S.C. § 1391. GRF is located in this district and a significant part of the events which gave rise to GRF's complaint occurred in this district.

II. Factual Background

On September 11, 2001, the United States experienced a major national tragedy. Four airplanes were hijacked and crashed, three of them into prominent locations (two into the World Trade Center in New York, New York and one into the Pentagon outside of Washington, D.C.). Throughout the day on which this national tragedy occurred, President Bush promised a "full-scale investigation to hunt down and punish those responsible for those acts." In addition to bringing the perpetrators to justice, President Bush stated that the United States would make no distinction between those "who committed these acts and those who harbor them."

During the days following September 11, 2001, President Bush declared the suicide strikes "acts of war" and vowed to win this war. On September 14, 2001, the United States began identifying the targets of its war. After listing the 19 hijackers responsible for the September 11, 2001 attacks, the Federal Bureau of Investigation identified 100 individuals believed to have information relating to the hijackers. By September 15, 2001, President Bush

-3-

publicly identified Osama bin Laden and his Al-Qaeda network as the prime suspects behind the September 11, 2001 terrorist attacks.

On September 19, 2001, President Bush stated that the United States' war on terrorism would also focus on "NGOs, nongovernmental organizations, [which] serve as fronts, as funding mechanism for terrorist organizations." In furtherance of President Bush's attention to NGOs and other terrorist fronts, President Bush implemented Executive Order 13224 on September 23, 2001 which was intended to freeze assets of people and organizations that support terrorists. The Executive Order also authorized the Secretary of State and Secretary of the Treasury to freeze the assets of additional persons who, after investigation, were determined to be associated with terrorism.

III. Undisputed Facts

GRF is an Islamic-based charitable organization which directs its fundraising efforts primarily to Muslims in the United States and Europe.

Since at least November, 1997, the FBI and its Special Agent in the Chicago Field Office, Brent E. Potter ("Potter"), has been investigating GRF for "its possible ties to terrorist organizations, including Al-Qaeda, and its possible support of terrorist activities." (Declaration of Brent E. Potter ("Potter Decl."), ¶ 1). GRF was "the subject of an investigation for possibly having violated IEEPA, 50 U.S.C. Sections 1701-06, relating to financial sanctions imposed against persons that support designated terrorists." (Potter Decl. at ¶ 35).

The Office of Foreign Assets Control ("OFAC") of the United States Department of the Treasury ("Treasury") is the office principally responsible for administering U.S. sanctions programs, which are primarily directed against foreign states and nationals, including sponsors of

global terrorism, to implement U.S. foreign policy and national security goals. (Declaration of R. Richard Newcomb ("Newcomb Decl."), ¶¶ 1,3). The Director of OFAC, R. Richard Newcomb, has stated under oath that GRF has been subject to federal investigation since at least September 2001 for ties to terrorists as follows:

> [s]ince at least September 2001, GRF has been the subject of investigations by the Treasury and the FBI related to links to international terrorist organizations and their activities. Based on meetings I have attended and briefings I have received from my staff, it is my understanding that GRF's links to terrorist groups generally have been known within the intelligence and law enforcement communities dating back many years.

(Annex to Declaration of R. Richard Newcomb ("Newcomb Annex"), ¶ (U)2).

On September 24, 2001, ABC's Antonio Mora reported on Executive Order 13224 on Good Morning America. In that report Mora stated that GRF was one of the "charities accused of getting funds to bin Laden." Later that day, ABC stated on its website:

> In an early report on President Bush's Executive Order to freeze assets around the world, Good Morning America said that certain U.S.-based charities (the Holy Land Foundation, the Islamic Relief Agency, the Global Relief Foundation, and the Al Kifah Refugee Center) had been accused of "getting funds to Bin Laden." This is not the case. We regret the error.

On September 28, 2001, the New York Daily News published an article authored by Zev Chafets titled "Beware the Wolves Among Us." The article was principally about the Council on American-Islamic Relations ("CAIR"). It stated that CAIR was "in bed with at least two philanthropic groups suspected of being fronts for one of the Middle East's most lethally anti-American, anti-Jewish jihadists: Palestinian Hamas. The article also stated that GRF "has been accused by Israel and American security experts of funneling money and support to Hamas. Like

the Holy Land Foundation, it is currently under intense federal scrutiny." Finally, the article stated that CAIR regarded the two organizations as "victims of persecution."

On October 1, 2001, the NYT published an article written by Judith Miller and Kurt Eichenwald, titled "A Nation Challenged: The Investigation; U.S. Set to Widen Financial Assault." The article indicated that "administration officials are preparing to freeze the assets of about two dozen more charities and other organizations that are suspected of providing money and support to [bin Laden's] terrorist operations." With regards to GRF, the article said:

> Administration officials are recommending that an American charity be included on the new list - the Global Relief Foundation, which provides emergency relief, medical aid and engages in other humanitarian efforts around the world.
>
> Global Relief, based in Bridgeview, Ill., long a hub of militant Islamic activity, is also making an appeal on its Web site for victims of the catastrophes at the World Trade Center and the Pentagon, though it does not refer to them as terrorist attacks.
>
> Global Relief was originally included two years ago on a list circulated by the Clinton administration of 30 organizations with suspected ties to terrorism. But in an interview last year Stanley Cohen, a lawyer for Global Relief, called the investigations of the foundation 'another of the government's pathetic attempts to sully committed Islamic organizations.'"

On October 5, 2001, AP published an article authored by Martha Mendoza titled "Islamic Aid Groups Scrutinized." The article identified GRF as one of three U.S. based relief organization receiving "close federal scrutiny" that "may or may not be on the government's next list" of organizations to have their assets frozen. The article included a statement by Ashraf Nubani, GRF's spokesmen, that the "organization is being unfairly singled out because it is run by Muslims."

On October 11, 2001, the Boston Globe published an article written by Mac Daniel and titled "Charity Probe: Muslim Relief Agency Eyed in Terror Link." The entire article was about GRF and it stated that GRF was expected to be added to the Treasury list of U.S. charities with ties to terrorism. The article said that many of the world's top relief agencies had never even heard of GRF's work. It included a statement from GRF's accountant, Zahir Kazmi, who said he could not say how or where the money was spent after it left American shores. Nubani denied that the group's funds go to anything but humanitarian and said GRF has only been in "casual" contact with federal investigators.

On November 7, 2001, Hearst published an article written by Winokur and Berthelsen titled "Two Muslim Charities Probed for Terror Link; Bay Donors Chip in to Chicago Groups." The article named GRF as one of two charities that the "U.S. treasury Department is scrutinizing." It talked about a Muslim's obligation to give a portion of his income to charity and that GRF is one of the charities. The article also stated that GRF had "denied roles in terrorist financing and condemned the Sept. 11 attacks on the World Trade Center and the Pentagon."

On December 14, 2001, OFAC issued an order blocking the funds, accounts, financial assets, and business records of GRF pending its investigation of GRF. The Blocking Notice states:

> The United States Government has reason to believe that Global Relief Foundation Inc. ("GRFI") may be engaged in activities that violate the International Emergency Economic Powers Act, 50 U.S.C. §§ 1701-06 ("IEEPA"). You are hereby notified that pursuant to the authorities granted by IEEPA, the U.S. Department of the Treasury is blocking all funds and accounts and business records in which GRFI has any interest, pending further investigation and resolution of this matter.

On December 14, 2001, shortly before OFAC's blocking action, the FBI conducted a search of GRF's Illinois offices and removed some of its property from those offices. (Newcomb Decl. at ¶ 41). On October 18, 2002, the Treasury Department designated GRF a "Specially Designated Global Terrorist" - "SDGT"

IV. Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is "material" if it could affect the outcome of the suit under the governing law; a dispute is "genuine" where the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Supreme Court has emphasized "that at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue [of material fact] for trial." Id. at 249. In performing this task, all factual disputes are resolved, and all reasonable inferences are drawn, in favor of the nonmoving party. Jackson v. Illinois Medi-Car, Inc., 300 F.3d 760, 764 (7th Cir.2002). However, "[s]elf-serving assertions without factual support in the record will not defeat a motion for summary judgment." Jones v. Merchants Nat'l Bank & Trust Co., 42 F.3d 1054, 1058 (7th Cir.1994).

The burden is initially upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the moving party believes demonstrate an absence of a genuine issue of material fact.

Celotex v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party may not rest upon the mere allegations contained in the nonmoving party's pleading, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); Insolia v. Philip Morris Inc., 216 F.3d 596, 598 (7th Cir.2000). Accordingly, summary judgment is mandatory "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. In such a situation, there can be " 'no genuine issue as to any material fact', since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

V.  Discussion

The defendants argue that summary judgment on GRF's defamation claims should be granted in their favor because they have established that their statements regarding the investigation of GRF are true.

"The law of defamation is well-settled: 'A statement is considered defamatory if it tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with him.'" Parker v. House O'Lite Corp., 324 Ill. App. 3d 1014, 756 N.E.2d 286, 292, 258 Ill. Dec. 304 (Ill. App. Ct. 2001), app. denied, 763 N.E.2d 772 (Ill. 2001). To establish defamation under Illinois law, a plaintiff must show: (1) the defendant made a false statement about the plaintiff; (2) there was an unprivileged publication to a third party with fault by the defendant; and (3) the publication damaged the plaintiff. Id. at 291-92.

In this case, GRF has failed to offer any evidence of falsity which would create a genuine issue of material fact. As the Supreme Court stated, it is well-settled law that where the party opposing summary judgment bears the burden of proof on a dispositive issue, it must offer specific evidence demonstrating a factual basis on which it is entitled to relief. Anderson, 477 U.S. at 256, 106 S.Ct. 2505. The party may not rely on conclusory allegations or speculation alone to oppose summary judgment. Anderson v. Stauffer Chemical Co., 965 F.2d 397, 402 (7th Cir.1992). Defamation actions, by definition, require plaintiffs to carry the burden of proving that the statement made by the defendant was false. Philadelphia Newspapers, Inc. v. Hepps, 475 U.S. 767, 776, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986); Haynes v. Alfred A. Knopf, Inc., 8 F.3d 1222, 1228 (7th Cir.1993) ("A person does not have a legally protected right to a reputation based on the concealment of the truth."). Here, plaintiff puts forth no effort, other than making blanket denials of their link to terrorism, to refute the truth of the news reports at issue in this case.

As a result, under Illinois law, defendants need only prove that their news reports were "substantially true" to prevail in their motion for summary judgment. See American Int'l Hosp. v. Chicago Tribune Co., 136 Ill.App.3d 1019, 1022, 91 Ill.Dec. 479, 483 N.E.2d 965 (1st Dist.1985). That is, to prove that a defamatory statement is true, the defendant "need only show the truth of the 'gist' or 'sting' of the defamatory material." Cianci, 298 Ill.App.3d at 424, 232 Ill.Dec. 583, 698 N.E.2d 674. When determining the "gist" or "sting" of allegedly defamatory material, a trial court must "look at the highlight of the article, the pertinent angle of it, and not to items of secondary importance which are offensive details, immaterial to the truth of the defamatory statement." Parker, 324 Ill.App.3d at 1026. As the court stated in Hollymatic Corp. v. Daniels Food Equip., Inc., 39 F.Supp.2d 1115 (N.D.Ill.1999), "while normally that

-10-

determination would be made by a jury, a court can hold that the allegedly defamatory statement is substantially true as a matter of law if no reasonable jury could find that substantial truth had not been established." (citing Cianci, 298 Ill.App.3d at 424, 232 Ill.Dec. 583, 698 N.E.2d 674.) After careful examination of the briefs and supporting statements of fact, the court concludes that no reasonable jury could find that substantial truth has not been established in the instant case.

The plaintiff argues that the gist or sting of the articles at issue was that GRF was guilty of diverting money to bin Laden and Hamas. Thus, GRF argues that summary judgment is improper because the defendants have not proven that GRF was actually linked to terrorist organizations. However, after a careful review of the articles it is clear that the gist or sting of the articles was that the federal government was investigating GRF for possible links to terrorism and was considering freezing its assets.[1] The defendants never stated that GRF was linked to terrorist organizations. They merely reported that the government alleged or suspected that GRF provided financial support to terrorism. They did not present their own evidence of GRF wrongdoing, purport to "impute guilt to plaintiff," or seek to "build a case against GRF" as GRF contends. Through the affidavits of Newcomb and Potter the defendants have proven that GRF

---

[1] Specifically, ABC and Mora stated that GRF was "accused of getting funds to bin Laden." NYT, Miller and Eichenwald stated that "[a]dministration officials are recommending that [GRF] be included on the new list [of organizations that are suspected of providing money and support to Osama bin Laden]." AP and Mendoza stated that GRF was "[a]mong U.S.-based relief organizations receiving close federal scrutiny" and "may or may not be on the government's next list." Boston Globe and Daniels stated that GRF "may also be a clandestine agent of terror, according to federal investigators" and that GRF "this week is expected to be added to an undated Treasury list of US charities and relief agencies with alleged ties to terrorism, government officials said." The Daily News and Chafets stated that GRF "has been accused by Israel and American security experts of funneling money and support to Hamas. Like the Holy Land Foundation, it is currently under intense federal scrutiny." Hearst, Winokur, and Berthelsen stated that GRF is one of "the organizations the U.S. Treasury Department is scrutinizing."

was in fact under investigation for possible links to terrorism at the time of their news reports. The Court will address each of the articles in turn.

The AP report states simply that GRF and two other charities were "receiving close federal scrutiny," were "being investigated," and "could be included" on the next Treasury Department list of organizations whose assets were frozen, according to officials close to the investigation. The AP reported just the fact of the government investigation, presenting none of the government's evidence and making no "endorsement" of GRF wrongdoing at all. AP included GRF's objection that it was being unfairly singled out by the government, and even noted GRF "may not" have its assets frozen.

GRF does not dispute the truth of any of the facts reported by the AP. GRF's opposition contends only that the AP put an "editorial spin" on the government's actions by including the true statement that Islamic culture requires charity in the form of both tithes and donations, and noting that "a difference of opinion" exists about how much of the money donated by millions of Americans to a whole "host of" Islamic charities "goes to help needy people and how much funds terrorism." The defendants maintain that the statements are not defamatory because they may be innocently construed. The innocent construction rule requires that the statement be "considered in context, with the words and the implications therefrom given their natural and obvious meaning." Chapski v. Copley Press, 92 Ill.2d 344, 352, 65 Ill.Dec. 884, 442 N.E.2d 195 (Ill. 1982). If, under this construction, the statement may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff, then it is not actionable as a matter of law. 92 Ill.2d 344, 352, 65 Ill.Dec. 884, 442 N.E.2d 195. In this case, the "difference of opinion" referred to in the AP article is about how donations are handled by many

different charities and does not specifically refer to GRF. Thus, the statement is not actionable because it may be interpreted as referring to some charity other than GRF.

The New York Times article, A Nation Challenged: The Investigation: U.S. Set to Widen Financial Assault, reported on the U.S. government's investigation of two dozen Islamic organizations, including GRF, suspected of providing money and support to terrorists. The article reported that Treasury officials were considering freezing the assets of those entities. The Times also reported GRF's strong denial of the government's suspicions. GRF is not mentioned until the last three paragraphs of the Times article. Paragraph 20 of the article states, "Administration officials are recommending that an American charity be included on the new list - the Global Relief Foundation, which provides emergency relief, medical aid and engages in other humanitarian efforts around the world." The article then goes on to state that the federal government officials were recommending that GRF's assets be frozen. Paragraph 21 of the article identifies that GRF is based in Bridgeview, Illinois. The town, not GRF, is called a hub of militant Islamic activity. The article describes GRF's appeal on its web site for victims of the World Trade Center catastrophe. Paragraph 22 of the article states that GRF had been under investigation for "suspected ties to terrorism" two years ago. This fact is also true. FBI Agent Potter testified that GRF was under investigation since at least November 1997 (approximately 3 years and 10 months before the article). Finally, the last sentence of the Times article quotes a lawyer for GRF as describing the government investigation of GRF as "pathetic attempt[s] to sully committed Islamic organizations." GRF does not claim this statement to be a misquotation or otherwise false. In sum, the Times reported that GRF had been investigated for ties to terrorists, including al Qaeda, for more than two years and government officials were

recommending that GRF be put on a list of organizations whose assets would be frozen. The article reports solely on the governmental investigation and is true.

The ABC News Report was nothing more than a short, "breaking news" item on the news segment of "Good Morning America" accurately reporting that the government would be freezing the assets of charitable organizations as part of the financial aspects of the war on terrorism. GRF seeks to defeat summary judgment by contending that ABC tried to "build a case" against GRF by "presenting [its] own evidence that GRF diverted money to bin Laden and Hamas." GRF, however, fails to cite a single example of ABC presenting its "own evidence" against GRF, or trying to "build a case" against GRF through "its own investigation."

ABC reported on the government's action in issuing the Executive Order and its reasons for doing so. Ironically, GRF's amended complaint concedes as much. (See Am. Cpl., ¶ 42 ("Reporting on the previous day's Executive Order ... ABC broadcast the following false report ...").) The gist of the report was that as a "punch" in the government's "financial war against terrorism," President Bush was issuing an Executive Order freezing the assets of charities that the government believed had funneled money to bin Laden and other terrorist organizations. The report mentioned GRF just once (near its conclusion), and then only to identify GRF (and three other charities) as a subject of the anticipated government action. The substantial truth of the report can not be refuted.

The Boston Globe article, citing federal investigators, reported that GRF was being investigated by the federal government for ties to terrorists and "had been under federal scrutiny for some time." Specifically, the article entitled, Charity Probe: Muslim Relief Organization Eyed in Terror Link, reported tat GRF's name had been placed two years earlier on a list

compiled by the federal government of 30 U.S. charities and relief organizations "with alleged ties to terrorism." The newspaper added that GRF is "expected to be added to an undated Treasury list of U.S. charities and relief agencies with alleged ties to terrorism, government officials said." Apart from this reference, the remainder of the article describes GRF's fundraising activities, GRF's accountant's and attorney's statements about how GRF expended its funds, the lack of detail in GRF's filings with the Internal Revenue Service about its expenditures and the lack of knowledge by other international charitable organizations about GRF's activities. None of these statements accuses GRF of any misconduct or endorses the government's suspicions of GRF's links to terrorists. While GRF alleges that the Globe's article "create[s] a false implication" that GRF "lies about its relief efforts and is not a legitimate charity," this characterization of the article is contrary to Illinois law, which requires this Court to accept a reasonable non-defamatory meaning for an article alleged to be libelous per se. These statements do not accuse GRF of any wrongdoing or lack of integrity. Indeed, the story offers GRF's non-defamatory explanation for the lack of information: "tracking the foundation's money overseas is impossible for an organization trying to keep operating costs low." In sum, the Globe's statements about GRF being under federal investigation for links to terrorists are true and none of the other statements cited by GRF are libelous under Illinois law.

The Daily News article was about the Council on American-Islamic Relations ("CAIR") and its activities. GRF is first mentioned in the sixth paragraph as one of three charities which CAIR had recommended as recipients of charitable contributions. The only other express reference to GRF is in the following paragraph:

> The Global Relief Foundation, located in Bridge View, Ill. has been accused by
> Israel and American security experts of funneling money and support to Hamas.
> Like the Holy Land Foundation, it is currently under intense federal scrutiny.

Am. Cpl., ¶ 44. The article refers to the federal government's scrutiny of GRF. The additional reference to American and Israeli security experts accusing GRF of supporting Hamas is a true statement and adds nothing to the report of the federal government investigations of the same alleged conduct. The FBI had been investigating GRF for ties to terrorist organizations, including Al-Qaeda. Since both Al-Qaeda and Hamas are terrorist organizations, the fact that the Daily News article mentions Hamas does not alter the substantial truth of the article and did not paint GRF in a worse light. See Haynes, 8 F.3d at 1229 (in affirming summary judgment for publisher on the basis of substantial truth, the Court noted "[t]he allegedly false facts about [plaintiff] were variants of the true that did not paint him in a worse light."). The same is true of the article's reference to GRF being a legal American organization "[f]or now." In doing so, GRF complains that the article endorsed the position that it was connected to terrorists. To the contrary, that statement reflects the fact that the federal government was investigating GRF for ties to terrorists and was considering freezing its assets, which would assuredly affect GRF's charitable status. GRF was formally charged with being a SDGT and its assets have been frozen. Thus, GRF is unable to raise a genuine issue of material fact regarding the truth of the statements in the Daily News article.

The focus of the San Francisco Chronicle article was local "[d]onors in the Bay Area and elsewhere in California [who] have given nearly $270,000 to two Chicago-area Muslim charities that are being investigated for possible terrorist money-laundering activities." As the Chronicle reported, several donors expressed concern when informed of the investigation. The article

provided a brief background explanation of the government's suspicions about GRF. Since government officials "declined to comment," the Chronicle asked a security consultant to explain the government's theory about "charitable organizations suspected of serving as terrorist fronts," which, she said, was that donors are not told some of the money was "going to Hamas" or a"al Qaeda or Jihad." The government has since confirmed the substantial truth of the consultant's explanation by attesting that is suspected GRF of providing financial support to "terrorist organizations, including Al-Qaeda." (Potter Decl. at ¶ 1). The Chronicle did not endorse the proposition that GRF was guilty of having connections to terrorists. In fact, it noted the tentative nature of the government's case by using words such as "possible" and "suspected" and including not only GRF's denial but also statements by donors and others defending GRF. Thus, as with the other articles, there is no genuine issue of material fact regarding the substantial truth of the statements made in the Chronicle article.

The defendants have established that the news reports were substantially true. GRF has the burden at trial to prove that the statements made by the defendants were false. It can not do so. Accordingly, summary judgment in favor of the defendants is proper because GRF cannot "make a showing sufficient to establish the existence of an element essential to [its] case." Celotex, 477 U.S. at 322. In such a situation, there can be " 'no genuine issue as to any material fact', since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

## Conclusion

For the foregoing reasons, defendants' joint motion for summary judgment is granted.

Enter:

David H. Coar
United States District Judge

Dated: February 19, 2003